**Continuation of Application for Search Warrant**

Based on my knowledge, training and experience, and the investigation of law enforcement officers with personal knowledge and with whom I am working, I, Christopher Scott, being duly sworn, depose and state as follows:

### INTRODUCTION

1. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Controlled Substances, will be found on certain electronic devices (hereinafter the "**Subject Devices**," described more fully in Attachment A). The categories of electronically stored information and evidence sought are described in Attachment B.

2. This Application requests the issuance of a warrant to examine the **Subject Devices**, which were seized on November 7, 2019, following a traffic stop, along with approximately 1.5 kilograms of cocaine.

### APPLICANT'S TRAINING AND EXPERIENCE

3. I have been employed by the Drug Enforcement Administration (DEA) since 1997. I graduated the DEA Academy in 1998. From 1998-2005, I was assigned to the DEA New York Division. From 2005 to the present, I have been assigned to the DEA Detroit Field Division, Lansing Post of Duty. From 2006 to present (as a collateral duty), I have been assigned as the Michigan Domestic Cannabis Eradication/Suppression Program coordinator (DCE/SP). In that capacity, my duties include, but are not limited to, the eradication of marijuana, education-

teaching local departments about marijuana cultivation and marijuana trends. During my employment, I have worked undercover (purchasing drugs) and conducted surveillance. I have conducted, as well as participated in, hundreds of different narcotics investigations to include cocaine, heroin, fentanyl, methamphetamine, marijuana, "club drugs". During the course of these investigations, I have conducted interviews with victims, witnesses, suspects, made arrests, testified in Federal Grand Jury and have been a part of a Federal trial team.

4. I also know from training and experience that drug traffickers frequently utilize mobile telephones and other electronic devices, such as tablets and laptop and desktop computers, to facilitate drug trafficking. Mobile telephones are portable, and some mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so narcotics traffickers often use the devices in an effort to avoid detection by law enforcement. Mobile phones often contain evidence indicative of drug trafficking, including records of incoming and outgoing calls and text messages with suppliers of narcotics; voicemail messages; photographs of drugs, coconspirators, or currency; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time, providing evidence that the device was in high drug trafficking areas or evidencing the route used in trafficking narcotics. Additionally, drug traffickers typically maintain and use multiple mobile phones to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are frequently used to access social media websites

such as Facebook, Instagram, etc. In my training and experience, drug traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of narcotics.

5. Similarly, I also know from training and experience that drug traffickers use tablets, laptop and desktop computers to further their activities by, for example, producing and maintaining drug ledgers and other financial records, photos/videos of drug trafficking and/or associates, and other related digital files. Storing this information can be intentional by the user, such as saving an e-mail as a file on the computer or tablet or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally without the user's specific knowledge. This might include traces of the path of an electronic communication being automatically stored in many places, such as temporary files or Internet service provider (ISP) client software, or files that were previously viewed or deleted being retained in "free disk" space. In addition to electronic communications, a computer or tablets user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains certain file sharing software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. I also know from training and experience that drug traffickers utilize cameras and video cameras to take photos/video of narcotics, currency, high value items and coconspirators.

## PROBABLE CAUSE

6. On November 7, 2019, in Alaiedon Township, Ingham County, in the Western District of Michigan, Michigan State Police troopers initiated a traffic stop on a black Impala bearing Michigan registration of DXC2035 for a speeding violation and a lane use violation. Tpr. Parker Surbrook identified the driver as Kenneth Christopher Pointer. Pointer was the sole occupant in the vehicle.

7. Troopers observed marijuana on the front seat and detected the odor of marijuana coming from the car.

8. Tpr. Surbrook asked Pointer for permission to search the vehicle and was denied consent. A K-9 sniff was conducted around the vehicle. The K-9 alerted on the vehicle indicating the presence of illegal narcotics.

9. Tpr. Surbrook conducted a probable cause search of the vehicle. A large container in the shape of a brick was located in the front passenger seat of the vehicle. Inside of the container was a hard white powder suspected to be cocaine, as well as a brown paper bag filled with clear plastic baggies containing a white powder suspected to be cocaine located in the center console. A total of 1,539.8 grams of suspected cocaine was seized from the vehicle. In addition to the suspected cocaine, razor blades, two cell phones, and $740.00 banded with black rubber bands was located in the vehicle. Pointer was subsequently arrested.

10. The two cell phones recovered from the vehicle (the **Subject Devices**) are more specifically described as an Apple iPhone 7 that is black in color with no

case, with a crack on the front screen and a Verizon Kyocera flip phone that is blue and black in color.

11. The **Subject Devices** are currently secured in evidence with the Michigan State Police Lansing Post Property Room. The **Subject Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when they were first seized on November 7, 2019.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12. The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

13. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

14. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate forensic electronic evidence that establishes how the **Subject Devices** were used, the purpose of the use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

16. I respectfully submit that there is probable cause to believe that KENNETH POINTER has engaged in the possession with intent to distribute cocaine and evidence of that crime will be found in the **Subject Devices**. I submit that this application supplies probable cause for a search warrant authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.